

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-06-361-CR

------------

ROBERT DAVID BRACKEN                                    APPELLANT

V.

THE STATE OF TEXAS                                           STATE

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

------------

## OPINION

------------

A jury convicted Appellant Robert David Bracken of driving while intoxicated (DWI) enhanced by a prior DWI conviction. The trial court sentenced Appellant to sixty days' incarceration in the Tarrant County Jail and assessed a fine of $1,000. In three points, Appellant contends that the trial court erred by denying his motions to suppress, by denying his motion to limit

any direct or indirect references to any prior arrests or convictions for DWI, and by allowing improper closing argument. We affirm.

## Background

On September 3, 2004, Appellant was charged by information with driving while intoxicated. The charging instrument contained an enhancement paragraph relating to Appellant's previous DWI conviction.

On October 16, 2006, at a pretrial hearing, the trial court orally granted Appellant's motion to prevent reference to any prior convictions and his motion to limit the prosecutor from referencing any prior DWI arrest or conviction. The trial court also considered Appellant's motions to suppress, which sought to suppress any evidence seized by the officers in connection with the detention and arrest and any officer testimony concerning such evidence. After hearing testimony from the arresting officer, Tarrant County Sheriff's Deputy Howard Johnson, and Appellant and reviewing the in-car video of Appellant's driving made by Deputy Johnson during part of the time that he was following Appellant, the trial court orally denied Appellant's motion to suppress.

The videotape also captured Appellant's sobriety tests performed at the police station. While the jury was deliberating, the jurors asked to see the videotape of Appellant's tests at the stop and at the station. By agreement, the video was forwarded to the point of the test at the stop that would prevent the jury from hearing the part of the tape referencing Appellant's prior conviction

2

for DWI.  But the judge noted that the "entire exhibit's in evidence" and "if they want to see it, I'm going to let them see it."  The jury was given the tape to watch in the jury room.

**1.      Motion to Suppress**

In his first point, Appellant argues the trial court erred by denying his motion to suppress because the State failed to show that Deputy Johnson had a reasonable suspicion for the initial traffic stop.[1]

---

[▲]

[1]The dissent contends that we are imposing a double standard for defendants and the State by allowing this appeal when the trial court did not reduce its denial of the motion to suppress to writing.  The dissent urges that we should follow our opinion in *Cox v. State*, 235 S.W.3d 283 (Tex. App.—Fort Worth 2007, no pet.).  In *Cox*, we held that the *State* could not appeal from the *grant* of a motion to suppress evidenced by only a docket entry because the trial court had not "entered" its ruling by reducing it to a signed written order, which we held was required by article 44.01.  *Id.* at 284; *see* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 2008) (providing State entitled to appeal from grant of motion to suppress); art. 44.01(d) (providing appeal may not be taken more than fifteen days after order "entered" by court); Tex. R. App. P. 26.2(b) (providing State's time to appeal runs from date trial court "enters" order).  Such an appeal is interlocutory and strictly governed by statute and is entirely different from the appeal in this case.  We have never held that a written order *denying* a motion to suppress is a prerequisite to a *defendant's* appeal from a final judgment of conviction, and nothing in the code of criminal procedure supports such a requirement.  *See* Tex. Code Crim. Proc. Ann. art. 44.02 (Vernon 2006); Tex. R. App. P. 25.2(a)(2)*; Montanez v. State*, 195 S.W.3d 101, 105 (Tex. Crim. App. 2006) (holding defendant appealing the denial of a motion to suppress was not required to request a ruling or object to trial court's refusal to rule when record showed that trial court implicitly overruled motion to suppress); *Flores v. State*, 888 S.W.2d 193, 196 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding that signed docket entry evidences trial court's ruling on motion to suppress evidence even when denial of motion to suppress appears nowhere

3

**Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez*, 195 S.W.3d at 108–09; *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial

else in record).

4

court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

**Reasonable Suspicion**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Torres*, 182 S.W.3d at

5

902; *Ford*, 158 S.W.3d at 492.  Once the defendant has made this showing, the burden of proof shifts to the State, which must then establish that the government agent conducted the search or seizure pursuant to a warrant or that the agent acted reasonably.  *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492.

The Supreme Court has held that a detention is reasonable under the Fourth Amendment if the government agent reasonably suspects a person of engaging in criminal activity.  *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).[2]  Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.  *Ford*, 158 S.W.3d at 492–93.  This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists.  *Id*. at 492.

---

[2] Because a routine traffic stop typically involves only a short, investigative detention, as opposed to a custodial arrest, we analyze traffic stops under the principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. at 22, 88 S. Ct. at 1880; *see Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138 (1984); *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, pet. dism'd, untimely filed).

**Analysis**

At the suppression hearing, Deputy Johnson testified that he began to follow Appellant's vehicle after he saw approximately half of the vehicle cross the yellow center lane divider at approximately 1:30 a.m. on FM 1187, a two-lane rural road that was undergoing construction work. He said that as he followed Appellant, Appellant weaved from one side of the lane to the other repeatedly, crossing or driving on the white and yellow lines and lane bumps several times. He testified that Appellant's driving indicated to him "that [he] possibly had an intoxicated driver on hand." When asked on cross-examination whether Appellant's failure to maintain a single lane was dangerous, he answered that it was dangerous to Appellant himself because he was weaving in a construction zone with no shoulder and with concrete barriers and traffic barrels on the side of the road. He agreed that under the circumstances present at the time, i.e., a construction zone with no shoulder, it could be safer to drive closer to the center line if no oncoming traffic was present. After reviewing the in-car video he made during the pursuit, Deputy Johnson admitted that at one point his own vehicle drove on the lane bumps but said that in so doing he did not create a danger to anyone else.

The trial court also reviewed the in-car video, as has this court. It shows Appellant's car drifting back and forth, repeatedly driving on or over the "Botts

7

Dots," or lane bumps, and paint-marker flags at either edge of the lane as it travels through a construction zone on a two-lane country road in the dark.

Appellant testified that he never crossed the center line. He said that his tires touched the center-line lane bumps once or twice, but as soon as he felt the bumps, he moved back into the center of the lane.

Deputy Johnson identified three aspects of Appellant's driving as giving rise to a reasonable suspicion for the traffic stop: Appellant's crossing over the center line by half a vehicle's width; crossing or driving on the fog line; and weaving back and forth within his lane over the course of several miles, which led him to suspect that Appellant was intoxicated. Transportation code section 545.051 provides that an operator on a roadway of sufficient width shall drive on the right half of the roadway unless the operator is passing another vehicle, an obstruction necessitates moving the vehicle to the left of the center of the roadway, the operator is on a roadway divided into three marked lanes for traffic, or the operator is on a roadway restricted to one-way traffic. Tex. Transp. Code Ann. § 545.051(a) (Vernon 1999). Deputy Johnson testified that when he first saw Appellant's vehicle, Appellant crossed the center line of the two-lane, two-way roadway by half a vehicle's width; in other words, Appellant failed to drive on the right, and none of section 545.051(a)'s exceptions to this requirement apply. This observation alone was enough to create a reasonable

8

suspicion that Appellant had violated the law. *See Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (op. on reh'g) (holding officer's observation of defendant's vehicle crossing center line one time provided reasonable suspicion for traffic stop).

Appellant cites *Ehrhart v. State*, 9 S.W.3d 929 (Tex. App.—Beaumont 2000, no pet.), for the proposition that a vehicle's touching the fog line two or three times does not justify a stop. In that case, one officer testified that the defendant's vehicle crossed the left white line (not the yellow center stripe) once and the right white line twice. *Id.* at 930. Another officer testified that the defendant's vehicle only touched the right white line twice. *Id.* There was no evidence that the defendant's failure to maintain a single lane of travel was unsafe. *Id.* *Ehrhart* is distinguishable from this case because it involved a different section of the transportation code, section 545.060(a), which provides that a driver must drive as nearly as practical within a single lane and may not move from the lane unless that movement can be made safely. Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999).[3] We need not decide whether the

---

[3] We recently analyzed section 545.060(a) and the circumstances under which it gives rise to a reasonable suspicion of a traffic violation in *Fowler v. State*, 266 S.W.3d 498 (Tex. App.—Fort Worth 2008) (en banc) (holding testimony that defendant's vehicle crossed into an adjacent same-direction lane one time by a tire's width and touched the white line two more times when it was not unsafe to do so did not show a reasonable suspicion for a traffic stop), *pet. stricken*, 2008 WL 5245352 (Tex. Crim. App. 2008).

suppression hearing evidence in this case supports a reasonable suspicion that Appellant violated section 545.060(a) because we have already determined that the evidence justified a stop based on Appellant's violation of section 545.051(a), which does not contain an "unless the movement can be made safely" exception to the prohibition against crossing the center line. *See id*. § 545.051(a). Thus, whether Appellant could safely cross the center line is irrelevant to our reasonable suspicion analysis.

For these reasons, we hold that the trial court did not err by denying Appellant's motion to suppress, and we overrule his first point.

## 2. Evidence of Prior DWI Conviction

In his second point, Appellant complains that the trial court erred by allowing the evidence concerning which it had granted a pretrial motion in limine (evidence of Appellant's prior arrests and conviction for DWI) to be submitted to the jury during deliberations. During its case-in-chief, the State offered the videotape that contained statements relating to Appellant's prior arrests and conviction for driving while intoxicated. Appellant affirmatively stated that he had no objection to admission of the videotape, which was then admitted in its entirety and without limitation. *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). The ruling on the motion in limine did not preserve any complaint. *See Wilkerson v. State*, 881 S.W.2d 321, 326

(Tex. Crim. App.), *cert. denied,* 513 U.S. 1060 (1994); *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App.), *cert. denied*, 472 U.S. 1009 (1985). Additionally, the conscientious trial judge did all he could to limit the jury's viewing of the tape during deliberations to that portion which the jury had requested, the sobriety tests. We overrule Appellant's second point.

**3.    Improper Argument**

In his third point, Appellant argues that the State was allowed to mislead the jury in closing argument. The prosecutor stated, "Now if ya'll can figure that out, you're smarter than me. That means that his last drink was at the time that he got there, apparently. If you're only there for an hour, your last drink can't be an hour before you leave the bar. Does this make sense?"

Appellant argues that "[t]his false information was extremely damaging to [him] in several ways." Appellant, however, did not object to the argument below, nor does he provide legal authority to support his position on appeal. He has therefore failed to preserve his complaint. *See* Tex. R. App. P. 33.1(a), 38.1(h); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *Tong v. State,* 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 1053 (2001); *Mosley v. State*, 983 S.W.2d 249, 256, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). We overrule his third point.

11

**Conclusion**

Having overruled Appellant's three points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.
DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  January 15, 2009


### NO. 2-06-361-CR

ROBERT DAVID BRACKEN                                              APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

This case raises three significant issues, one of which the majority addresses, albeit only in a footnote, and two of which the majority fails to address:

1. Is this court correct to create a double standard for reviewing rulings on motions to suppress, depending on whether the trial court rules for or against the State?

2. Alternatively, if we reach the merits of the suppression issue, what weight do we give the trial court's implicit findings of fact when they are

supported by a witness's testimony but contradicted by a videotape of those events?

3. Further, when a law enforcement officer testifies that his reasonable suspicion to detain the defendant was established by a combination of three events, and the videotape shows that one or more of those events did not occur, has the State proved reasonable suspicion to justify the warrantless detention?

Because the majority establishes a double standard for reviewing rulings on motions to suppress, and, alternatively, in reaching the merits of the suppression issue does not address the last two questions posed above, I respectfully dissent.

## I. Oral Ruling on Motion to Suppress

The trial court orally denied Appellant's motions to suppress but did not enter a written order. In his first point, Appellant argues that the trial court erred by denying his motions to suppress. This court has held that there is no appealable ruling on a motion to suppress unless the trial judge enters a written order.[4] As noted in *Cox*, "[W]e notified the State of our concern that we lacked

---

[4] *State v. Cox*, 235 S.W.3d 283, 283, 285 (Tex. App.—Fort Worth 2007, no pet.) (en banc).

2

jurisdiction over the appeal because there is no appealable written order."[5] We concluded in the opinion that we indeed lacked jurisdiction based on the absence of a written order.[6]

Following the *Rosenbaum* court,[7] we interpreted "entered by the court" to mean the signing of a written order.[8] We recognized that *Rosenbaum* dealt with former appellate rule 41(b)(1), which required an appealable order signed by the trial court, and which has been superseded by appellate rule 26.2(b), which does not.[9] And we did not address the fact that although article 44.01(d) of the code of criminal procedure and appellate rule 26.2(b) speak of a sentence to be appealed,[10] the appellate timetable runs not from the signing of the written judgment and sentence but from the pronouncement of sentence in open court.[11]

---

[5] *Id.* at 284.

[6] *Id.* at 285.

[7] *State v. Rosenbaum*, 818 S.W.2d 398 (Tex. Crim. App. 1991).

[8] *Cox*, 235 S.W.3d at 284.

[9] *Id.* at 284 & n.9.

[10] Tex. Code Crim. Proc. Ann. art. 44.01(d) (Vernon Supp. 2008); Tex. R. App. P. 26.2(b).

[11] Tex. Code Crim. Proc. Ann. art. 42.03, § 1(a) (Vernon Supp. 2008); Tex. R. App. P. 26.2; *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004).

By holding in *Cox* that the trial court does not enter an order granting a motion to suppress until formally signing a written order, even though the ruling and findings of fact and conclusions of law have been pronounced on the record in open court, we allowed the State more than six extra months to perfect its appeal. Yet, in the case now before this court, the majority holds that the trial court enters an order denying a motion to suppress when the trial court pronounces its ruling orally.[12] The majority states that the appeal lies because after a trial is concluded, the appellant is appealing from "a final judgment of conviction."[13] But the majority confuses the criminal rules of procedure with the civil rules of procedure. While the appellate timetable in a civil case runs from the signing of the judgment, the appellate timetable in a criminal case begins to run when the sentence is pronounced orally in open court.[14] The judgment may be signed days or even weeks later in a criminal case and has no effect on the appellate timetable.

To remain consistent with the rule of *Cox*, we should hold that because there is no written order denying Appellant's motions to suppress, there is nothing to appeal from the suppression ruling, and we should dismiss the

----

[12] *See* majority op. at 3 n.1.

[13] *Id.*

[14] *See* Tex. R. App. P. 26.1, 26.2.

4

issue.[15]  The majority, however, holds that when a defendant appeals from a ruling on the motion to suppress, no written order is necessary.

## II. The Officer's Testimony vs. The Exhibits

Further, in reaching the merits of the suppression issue, the majority does not address the significance of the conflicts between the officer's testimony and the objective evidence.  In the trial court, Tarrant County Sheriff's Deputy Howard Johnson testified that while on patrol around 1:30 a.m. on September 1, 2004, he observed a green Lincoln driving eastbound on FM 1187. Appellant was the driver of the vehicle.  Johnson testified that he saw the vehicle fail to maintain a single lane; specifically, he said that he saw about a fourth to half of the vehicle cross over the yellow center lane divider and into the westbound lane.  Although he later turned on his video camera, he did not record the driving he described at this point.

Johnson testified that he then began to follow the vehicle.  He said he saw the car drive over the center line at least once more and that he noticed the vehicle weaving "rythmatically" within the traffic lane. At some point while following the vehicle, Johnson turned on his in-car camera.  He denied that Appellant was speeding and testified that he would have stopped Appellant had

_____

[15] *See Cox*, 235 S.W.3d at 285.

Appellant been speeding. Johnson did testify, however, that Appellant "fail[ed] to maintain a single lane several additional times."

The pertinent portion of the transportation code provides, "An operator on a roadway of sufficient width shall drive on the right half of the roadway. . . ."[16] The videotape, still photographs, and testimony reveal that the roadway in the stretch in question is a narrow, winding road with no shoulder and with concrete barriers and barrels along the far edge of the roadway. A sign warns of the narrow road, and Johnson admitted that it could be safer to "get a little bit further away from a no-shoulder if there's no other traffic coming." As the majority concedes, Johnson himself was unable to confine his vehicle to the right-hand lane, although he testified that there was "adequate room on the roadway." Appellant testified at the suppression hearing that he never crossed the center line.

Johnson testified that he stopped Appellant's vehicle because of two instances of driving over the center line and "rhythmatic weaving" that, to him, was indicative of intoxication. The videotape does not support the officer's description of Appellant's driving. Indeed, Appellant's driving reveals no evidence of impairment and nothing that would provide reasonable suspicion of

---

[16] Tex. Transp. Code Ann. § 545.051 (Vernon 1999).

impairment that would justify a detention.

The majority substitutes its determination of reasonable suspicion for Johnson's, although the majority relies on his testimony that he saw Appellant's vehicle cross the center line. Johnson testified that he stopped Appellant because he had reasonable suspicion that Appellant was intoxicated and constituted a danger to himself, based on seeing him cross the center line twice and weave within his lane. The majority disagrees and says that Johnson stopped Appellant because he had reasonable suspicion that Appellant had violated section 545.051.

Although the standard for determining reasonable suspicion is an objective one, in that there need only be an objective basis for the stop, and the subjective intent of the officer conducting the stop is irrelevant,[17] when the officer states objective bases for the stop that are disproved by the physical evidence, here, the videotape, how much deference do we give the trial court's implicit findings of fact? When the still photograph of the roadway shows a lane so narrow that the vehicle depicted is riding the center stripe, how much deference do we give the trial court's implicit finding based on Johnson's testimony that the lane was not especially narrow? Again, it is a violation of

---

[17] *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

7

section 545.051 to cross the center stripe only when the roadway is "of sufficient width."[18] The majority does not discuss these important questions.

Johnson testified that reasonable suspicion to detain Appellant was provided by the combination of Appellant's crossing the center line twice, once on videotape and once unrecorded, and weaving "rhythmatically" within his lane. The videotape disproves Johnson's testimony. How much weight do we give the trial court's implicit finding that Johnson made these observations when the videotape contradicts his testimony? The majority does not discuss this important issue.

## III. Conclusion

Because the majority establishes a double standard for rulings on motions to suppress, and, alternatively, does not address the deference we should afford a trial court's implicit findings when objective, physical evidence conflicts with an officer's testimony on which the findings are based, I respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: January 15, 2009

---

[18] Tex. Transp. Code Ann. § 545.051.

8