# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00070-CV

**Clay McCoy Crawford, Appellant**

**v.**

**Texas Department of Public Safety, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF COMAL COUNTY
### NO. 2009-CV-0529, HONORABLE RANDAL C. GRAY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Clay McCoy Crawford appeals a judgment upholding the suspension of his driver's license. Crawford was arrested for driving while intoxicated ("DWI"), *see* Tex. Penal Code Ann. § 49.04 (West 2003), and refused to provide a breath specimen for analysis of his blood alcohol content. Accordingly, the Texas Department of Public Safety ("DPS") suspended Crawford's driver's license. *See* Tex. Transp. Code Ann. § 724.035 (West 2011). Crawford sought administrative review of the suspension. *See id*. § 724.041 (West 2011). An administrative law judge issued an order sustaining the suspension. *See id*. § 724.043 (West 2011). Crawford sought judicial review of the order. *See id*. § 524.041 (West 2007). The county court at law issued a judgment affirming the order. We affirm the county court at law's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

At approximately 10:40 p.m. on May 15, 2009, Comal County Sheriff's Deputy Frank Cockrell observed Crawford driving a truck with a boat in tow. Cockrell later wrote in a sworn report that he saw Crawford's "vehicle" swerve several times into the oncoming-traffic lane, sometime as much as two or three feet, and then saw "a large cloud of smoke come from the rear of the vehicle." Cockrell also wrote in his sworn report that he became "concerned that the operator was having difficulty maintaining control of the vehicle." The report does not clarify whether the term "vehicle" refers to the truck or the boat.

Cockrell stopped Crawford and approached his truck to speak with him. According to his report, when Cockrell did so he noticed that Crawford slurred his speech and smelled strongly of alcohol. Cockrell asked Crawford how much alcohol he had consumed that day, and Crawford responded, "I probably shouldn't have had what I had."[1] Cockrell asked Crawford if he felt he had consumed too much to drive, and Crawford responded, "I can make it home."

Cockrell administered three field sobriety tests to Crawford. Crawford exhibited four of six possible signs of intoxication on the Horizontal Gaze Nystagmus test, four of eight possible signs of intoxication on the Walk and Turn test, and one of four possible signs of intoxication on the One-Leg Stand test. After administering the tests, Cockrell arrested Crawford for DWI and transported him to the Comal County jail.

---

[1] The details of this exchange are contained in Cockrell's sworn report. DPS introduced the report into evidence at the administrative hearing without objection from Crawford.

After arriving at the jail, Crawford refused to provide a breath specimen for analysis of his blood alcohol content. DPS therefore suspended his driver's license. *See id*. § 724.035.

**STANDARD OF REVIEW**

We review administrative license-suspension decisions under the substantial-evidence standard. *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam). This means we will affirm an administrative license-suspension decision if the record demonstrates a reasonable basis for the decision. *Id*. We may not substitute our judgment for that of the agency. *Id*. Rather, we must affirm the agency's decision if more than a scintilla of evidence supports it. *Id*.

**DISCUSSION**

Crawford contends that the trial court erred by affirming his license suspension because the record contains insufficient evidence that Crawford committed an "identifiable traffic violation," which means that Cockrell lacked reasonable suspicion to stop and detain him. Crawford makes several arguments in support of this contention.

First, Crawford argues that Cockrell's failure to identify which "vehicle"—the truck or the boat trailer—swerved into the oncoming-traffic lane is "crucial, as it is foreseeable that a boat trailer could swerve slightly, even without intentional movement by the towing vehicle." Thus, argues Crawford, Cockrell's "failure to adequately describe the vehicle makes it impossible to determine whether an identifiable traffic violation was committed." This argument fails for two reasons. First, Cockrell's report stated that Crawford's "vehicle" emitted a large cloud of smoke. The administrative law judge could reasonably infer that Crawford's truck was more likely to emit

3

a cloud of smoke than the trailer it was towing. *See id*. (we affirm administrative law judge's decision if it has reasonable basis in record). Second, in statutes regulating road traffic, the term "vehicle" applies to both trucks and trailers. *See* Tex. Transp. Code Ann. § 541.201(23) (West 2011) ("vehicle" means "a device that can be used to transport or draw persons or property on a highway"). Thus, if Crawford violated a statute by swerving his "vehicle" into the oncoming-traffic lane, he violated the statute regardless of whether he swerved his truck or his boat trailer.

Next, Crawford argues that Cockrell's report suggests Cockrell might have stopped Crawford not for a specific traffic violation, but rather "out of concern for [his] well being." *See Hernandez v. State*, 983 S.W.2d 867, 870 (Tex. App.—Austin 1998, pet. ref'd) (officer lacked reasonable suspicion to stop driver where only articulated reason for stopping driver was concern for driver's well being). This argument fails because Cockrell's report contains detailed descriptions of erratic driving. *Cf. id*. The administrative law judge could reasonably infer that these descriptions were meant to reflect one or more specific traffic violations rather than a generalized concern for Crawford's well being. *See Mireles*, 9 S.W.3d at 131.

Next, Crawford makes two arguments based on the assumption that if he committed any traffic violation it must have been failure to maintain a single lane. *See* Tex. Transp. Code Ann. § 545.060(a) (West 2011) (if roadway is divided into two or more clearly marked lanes, motorist "shall drive as nearly as practical entirely within a single lane"). In the first of these arguments, Crawford asserts that because Cockrell did not specify how many times Crawford's "vehicle" swerved into the oncoming-traffic lane, Cockrell failed to establish that Crawford committed the offense of failing to maintain a single lane. In support of this argument, Crawford cites *State v.*

4

*Arriaga*, 5 S.W.3d 804, 807 (Tex. App.—San Antonio 1999, pet. ref'd), in which the court held that an officer lacked reasonable suspicion to stop a motorist partly because the officer could not recall how many times he saw the motorist's vehicle drift within its lane.

Second, Crawford argues that safety is the overriding concern of the statute requiring motorists to maintain a single lane, and Cockrell's report did not suggest that Crawford created a dangerous or unsafe condition by swerving. *See* Tex. Transp. Code § 545.060(a) (motorist may "move from the lane [if] that movement can be made safely"); *Hernandez*, 983 S.W.2d at 871 ("[W]ith respect to a vehicle's straying over a lane marker, a traffic violation occurs only when the vehicle's movement is in some way unsafe."). Thus, Crawford argues, Cockrell's report failed to show that Cockrell had reasonable suspicion to stop Crawford for failing to maintain a single lane.

The problem with these arguments is that the offense of failing to maintain a single lane applies when a motorist crosses the line "adjoining two lanes of traffic flowing the same direction." *See Texas Dep't of Pub. Safety v. Chang*, 994 S.W.2d 875, 878 (Tex. App.—Austin 1999, no pet.). When a motorist crosses into a lane of oncoming traffic, as Crawford did, the applicable offense is failure to drive on the right-hand side of the road. *See id*. A motorist must drive on the right-hand side of the road unless one of the following circumstances exists: the motorist is passing another vehicle, an obstruction necessitates moving to the left of the center of the road, the motorist is on a road divided into three marked lanes, or the motorist is on a roadway restricted to one-way traffic. Tex. Transp. Code Ann. § 545.051(a) (West 2011). If none of these circumstances exists, then a single instance of crossing into the oncoming-traffic lane on a two-lane road is a violation of the statute. *See Bracken v. State*, 282 S.W.3d 94, 98 (Tex. App.—Fort Worth

5

2009, pet. ref'd); *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (op. on reh'g). A violation of the statute creates reasonable suspicion justifying a stop. *See Bracken*, 282 S.W.3d at 98. Unlike a violation for failing to maintain a single lane, a violation for failing to drive on the right-hand side of the road does not require an unsafe maneuver. *Compare* Tex. Transp. Code § 545.051(a) *with* Tex. Transp. Code § 545.060(a).

Bearing all this in mind, the administrative law judge could reasonably conclude that Cockrell had reasonable suspicion to stop Crawford for failing to drive on the right-hand side of the road. *See id*. § 545.051(a). Cockrell's report states that Crawford crossed into the oncoming-traffic lane multiple times. *See Bracken*, 282 S.W.3d at 98 (officer had reasonable suspicion to stop motorist for violating transportation code section 545.051(a) where officer saw motorist cross into oncoming-traffic lane once). There is no indication (and Crawford makes no argument) that a circumstance existed that allowed Crawford to cross legally into the oncoming-traffic lane even once, let alone repeatedly.[2] Thus, Cockrell's report was a reasonable basis for the administrative law judge to conclude that Cockrell had reasonable suspicion to stop Crawford for failing to drive on the right-hand side of the road.

---

[2] Crawford does argue that Cockrell did not specify whether Crawford swerved in a passing or no-passing zone. While it is true that Crawford could have legally moved left to pass other vehicles if he was in a passing zone, *see* Tex. Transp. Code Ann. § 545.051(a) (West 2011), Cockrell described Crawford's driving as "*swerving* several times to the left." (Emphasis added.) It was reasonable for the administrative law judge to interpret the term "swerving" as being inconsistent with a legal, deliberate passing maneuver, especially given that Crawford swerved "several times." This conclusion is reinforced by the fact that Crawford's driving made Cockrell "concern[ed] for [Crawford's] well being"; the administrative law judge could reasonably infer that if Crawford had made legal, deliberate passing maneuvers, Cockrell would not have been concerned.

6

Even if Cockrell's report did not justify a finding that Cockrell had reasonable suspicion to stop Crawford for failing to drive on the right-hand side of the road, the report justified a finding that Cockrell had reasonable suspicion to stop Crawford for DWI. Whether an officer has reasonable suspicion to stop a motorist for DWI depends on the totality of the circumstances. *Curtis v. State*, 238 S.W.3d 376, 380 (Tex. Crim. App. 2007). A stop for DWI is justified when the officer has specific articulable facts that, taken together with rational inferences from those facts, lead him to conclude that a motorist is driving under the influence. *See id*. at 380-81. Observing a motorist's car weaving in and out of its lane several times, over a short distance, late at night, gives rise to a rational inference that the motorist is intoxicated. *Id*. at 381. Thus, on the basis of the observations recounted in Cockrell's report, the administrative law judge could reasonably conclude that Cockrell had reasonable suspicion to stop Crawford for DWI.

In sum, there were multiple bases on which the administrative law judge could reasonably conclude that Cockrell had reasonable suspicion to stop Crawford. It follows that the trial court did not err by affirming the administrative law judge's order suspending Crawford's license. *See Mireles*, 9 S.W.3d at 131 (courts must affirm administrative law judge's order if it has reasonable basis in record). We affirm the judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: June 16, 2011

7