

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-11-00034-CR

_____


JAMES CHRISTOPHER EMMERS, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 23765



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

James Christopher Emmers was charged in a two-count indictment with possession of methamphetamine with intent to deliver in a drug-free zone and possession of marihuana in a drug-free zone. Both counts charged Emmers as a repeat offender. Prior to trial, Emmers filed a motion to suppress evidence, which the trial court denied. After pleading guilty to both charges, Emmers was sentenced to two twenty-year terms of imprisonment, to run concurrently. Emmers appeals the trial court's denial of his motion to suppress evidence. We affirm the judgment of the trial court.

## I. FACTS

The only testimony presented during Emmers' suppression hearing was that of Officer Joseph Gordon of the Paris Police Department. Gordon testified that on the night of March 18, 2010, he was patrolling the area of 5th and Tudor Streets. As he crossed the intersection of 5th Northeast and Provine Streets, Gordon saw a vehicle approaching in the opposite lane of traffic. The vehicle, operated by Emmers, crossed over into the oncoming lane of traffic and then swerved back into the correct lane. There are no dividers between the lanes. There was no traffic in the area other than Gordon, who was driving at a slow rate of speed. After crossing into Gordon's lane and swerving back into his lane, Emmers backed into an area known as the Cornet. In doing so, Emmers backed in front of Gordon, causing Gordon to yield in order to avoid an accident. At that point, Gordon made contact with Emmers for failing to maintain a single lane of traffic and for

2

failure to yield the right-of-way to oncoming traffic. Emmers handed Gordon a piece of paper and then fled on foot. Gordon was able to apprehend and arrest Emmers. Upon conducting an inventory search of Emmers' vehicle incident to arrest, Gordon located over a pound of marihuana and approximately thirty grams of methamphetamine.

Emmers filed a motion to suppress this evidence, alleging the traffic stop was unlawful. At the suppression hearing, Gordon testified that he approached Emmers' vehicle because Emmers failed to maintain a single lane of traffic and because Emmers failed to yield the right-of-way to oncoming traffic. Both the State and Emmers argued over whether Gordon had reasonable suspicion to make the stop. *See Terry v. Ohio*, 392 U.S. 1 (1968).

## II. MOTION TO SUPPRESS

In his sole appellate point, Emmers argues that the trial court erred in denying his motion to suppress because the facts here do not rise to the level of reasonable suspicion necessary to justify the traffic stop.

### A. Standard of Review and Applicable Law

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination of questions not turning on credibility.

3

*Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Graves*, 307 S.W.3d at 489. We also afford deference to a trial court's "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 985 S.W.2d at 89. Because no findings of fact or conclusions of law were filed, we will assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

A "stop" by a law enforcement officer "amounts to a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections" against unreasonable searches and seizures. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). However, it is well-established that a law enforcement officer may stop and briefly detain a person suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry*, 392 U.S. at 21; *Carmouche*, 10 S.W.3d at 328. In order to stop or briefly detain an individual, an officer must have "reasonable suspicion" that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Gordon testified that he stopped Emmers for what he believed to be two different traffic violations. To justify a traffic stop, the officer must have observed specific objective, articulable

4

facts which, in light of the officer's experience and personal knowledge, together with inferences from those facts, would warrant a reasonable person to believe a traffic violation occurred. *Id.* at 492–93; *Bass v. State*, 64 S.W.3d 646, 648 (Tex. App.—Texarkana 2001, pet. ref'd). This objective standard disregards the subjective intent of the officer making the stop, and is based on the totality of the circumstances. *Ford*, 158 S.W.3d at 492–93.

## B. Failure to Maintain Single Lane of Traffic

Emmers initially asserts the trial court erred in determining that Gordon had reasonable suspicion to stop him based on the fact that he briefly crossed into Gordon's lane of traffic. Section 545.060(a) of the Texas Transportation Code provides:

**Driving on Roadway Laned for Traffic**

> (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:
>
> > (1) shall drive as nearly as practical entirely within a single lane; and
> >
> > (2) may not move from the lane unless that movement can be made safely.

TEX. TRANSP. CODE ANN. § 545.060 (West 2011).[1] Gordon testified that there are no dividers between the lanes of 5th Northwest Street, and the lanes are not clearly marked. Emmers maintains that since the lanes on 5th Northwest Street are not clearly marked, crossing into the

---

[1]With respect to the alleged offense of failure to maintain a single lane of traffic, both parties identify the controlling statute as Section 545.060 of the Texas Transportation Code. TEX. TRANSP. CODE ANN. § 545.060.

opposite lane is not a violation of this section of the Texas Transportation Code, which specifically applies to roadways divided into two or more clearly marked lanes for traffic.

The State maintains that it was not required to show that a traffic offense was actually committed; rather, it was only required to show that the officer reasonably believed a violation was in progress. *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd) (while there is no requirement that traffic regulation was actually violated, officer must reasonably believe violation was in progress); *Zervos v. State*, 15 S.W.3d 146, 152 (Tex. App.—Texarkana 2000, pet. ref'd) ("[I]t is not necessary to show that Zervos actually violated the traffic laws."). Gordon testified, upon questioning by the State, regarding Emmers' failure to maintain a single lane of traffic:

> Q.      [By State]   Tell the Judge if you see a traffic violation here shortly [viewing video recording from Gordon's patrol vehicle].
>
> A.      [By Gordon]   Right there, he's in the oncoming lane and he swerves back into his lane.
>
> Q.      Okay.   If he drives in the wrong lane, is that a ticketable offense?
>
> A.      Yes.
>
> Q.      Under the Transportation Code?
>
> A.      Yes.
>
> Q.      When he swerved over there, was that a ticketable offense?
>
> A.      Yes.

The State maintains that Emmers committed a violation of Section 545.560 and that even if there was no actual violation, Gordon nevertheless reasonably believed Emmers violated this section of the Code. Emmers complains that this conclusion is based on a mistaken understanding of the traffic laws, and, therefore, cannot form the basis of a reasonable suspicion for the traffic stop.[2] While it is true that the State "need not establish with absolute certainty that a crime has occurred in order to show reasonable suspicion," courts are not to defer to a police officer's legal conclusions. *Garcia v. State*, 43 S.W.3d 527, 530–31 (Tex. Crim. App. 2001). Since *Garcia*, Texas appellate courts have recognized that an officer's honest, albeit mistaken, understanding of the traffic law which prompted a stop is not an exception to the reasonable suspicion requirement. *Fowler v. State*, 266 S.W.3d 498, 504 (Tex. App.—Fort Worth 2008, pet. ref'd); *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Thus, an officer's suspicion of an alleged traffic violation cannot be based on a mistaken understanding of the traffic laws. *Goudeau*, 209 S.W.3d at 716.

Emmers argues that because the roadway in question was unmarked, Section 545.060 cannot, by definition, apply to his alleged movement from the right lane. Therefore, Gordon's conclusion that Emmers failed to maintain a single lane of traffic was based on a mistaken

---

[2]Emmers contends that even if the lanes were marked, there would be no reasonable suspicion here because the failure to maintain a single lane is a violation only when movement out of that lane cannot be made safely. Emmers maintains that his actions were not unsafe. *See* TEX. TRANSP. CODE ANN. § 545.060(a)(2). Because we find Section 545.060 of the Texas Transportation Code does not apply to the alleged offense, we do not address this contention.

understanding of the traffic laws.[3] We disagree. Gordon did not testify that Emmers' action of crossing into the oncoming traffic lane was a violation of Section 545.060; rather, Gordon testified that driving in the wrong lane is a "ticketable offense." Gordon further testified that he was unsure if the offense of the failure to maintain a single lane of traffic required marked lanes. While it is true that the cross-over here did not amount to a violation of Section 545.060, as that section only applies to marked traffic lanes, such a cross-over supports a reasonable suspicion that a traffic law violation has taken place.[4]

Section 545.051 of the Texas Transportation Code provides that "an operator on a roadway of sufficient width shall drive on the right half of the roadway" unless passing another vehicle, an obstruction necessitates moving the vehicle to the left of the center of the roadway, the operator is on a roadway divided into three marked lanes for traffic, or the operator is on a roadway restricted to one-way traffic. TEX. TRANSP. CODE ANN. § 545.051(a) (West 2011). Gordon testified that he watched Emmers cross into the opposing lane of traffic. The video recording from Gordon's patrol vehicle reflects an unmarked, unobstructed roadway.

The fact that the roadway here did not have a center stripe is of no consequence in making the determination of whether Gordon reasonably suspected the occurrence of a traffic law

---

[3]The State further contends that Gordon's characterization of the cross-over as a failure to maintain a single lane of traffic was not a mistake of law because Section 545.060(a) requires such movements to be made safely. Because it contends Emmers' movement out of his lane of traffic was unsafe, the State maintains that Emmers' reliance on *Goudeau* is misplaced. We disagree. The statute does not create two, separate offenses. Rather, Section 545.060(a) creates a single, two-part offense of (1) moving out of a marked lane (2) when it is unsafe to do so. *Fowler*, 266 S.W.3d at 502; *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.—Austin 1998, pet. ref'd).

[4]While the record indicates Gordon filed a police report, that report is not a part of the record before this Court. We decline to speculate as to the statutory basis of the alleged violation reflected in the report, if any.

violation.   Section 545.051 of the Texas Transportation Code does not limit the requirement of driving in the right lane only to roadways marked with a center stripe.   TEX. TRANSP. CODE ANN. § 545.051(a).   Moreover, the fact that the cross-over did not appear to be unsafe is of no consequence in determining whether Emmers committed a traffic violation.   Section 545.051 does contain a safety exception for movement from the right half of the roadway.   *See Bracken v. State*, 282 S.W.3d 94, 98–99 (Tex. App.—Fort Worth 2009, pet. ref'd) (because Section 545.051(a) does not contain an "unless movement can be made safely" exception to prohibition against crossing center, issue of whether such movement could be made safely is irrelevant to analysis of reasonable suspicion).

Gordon testified that Emmers drove left of center and then swerved back into the right lane. Gordon's observation was enough to create a reasonable suspicion that a traffic violation was in progress.   *See Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (officer's observation of defendant's vehicle crossing center line one time provided reasonable suspicion for traffic stop).   Moreover, the digital photograph taken from Gordon's patrol vehicle clearly depicts Emmers' vehicle in Gordon's lane of traffic.[5]   Accordingly, we conclude that Gordon had reasonable suspicion that a traffic violation was committed by virtue of the fact that

---

[5]At trial, the video recording from Gordon's patrol vehicle was played.   The exhibit provided in the record here depicts only a digital photograph of Emmers' vehicle in Gordon's lane of traffic.

Emmers failed to remain in the right half of the roadway, in violation of Section 545.051(a) of the Texas Transportation Code.[6]

## C.    Failure to Yield Right-of-Way

Gordon's second justification of reasonable suspicion to stop Emmers was Emmers' act of backing into the Cornet, which amounted to a failure to yield the right-of-way to oncoming traffic.[7] Section 545.152 of the Texas Transportation Code provides:

**Vehicle Turning Left**

To turn left at an intersection or into an alley or private road or driveway, an operator shall yield the right-of-way to a vehicle that is approaching from the opposite direction and that is in the intersection or such proximity to the intersection as to be an immediate hazard.

TEX. TRANSP. CODE ANN. § 545.152 (West 2011).

Emmers contends that Gordon lacked reasonable suspicion to initiate a stop for failure to yield the right-of-way because Emmers posed no immediate hazard to Gordon, as required by the Code.    Gordon testified that the stop was justified:

> Q.    [By Emmers' attorney]  Okay.  And then third is that he backed across the road?
>
> A.    [By Gordon]  Yes.

---

[6] Even though the parties do not address the application of Section 545.051 to the facts before us, this Court is obligated to uphold the trial court's evidentiary ruling under any theory of law that finds support in the record.  *Gonzalez*, 195 S.W.3d at 126.

[7] The State contends on appeal that other specific, articulable facts inferred intoxication, providing reasonable suspicion for the traffic stop.  Because we find reasonable suspicion for the traffic stop existed due to alleged traffic violations, we do not address this issue.

Q.     And what violation is that?

A.     Failed to yield right-of-way.

Q.     Okay.   Failed to yield right-of-way, vehicle turning left?

A.     Or to oncoming traffic.   He failed to yield right-of-way to oncoming traffic.   He backed in front of me.   I, essentially, had to yield to him by stopping.

. . . .

Q.     You speed up to 13 miles an hour, correct?

A.     Yes.

Q.     Then you slow down to 11 miles an hour.

A.     Okay.

Q.     As you approach his vehicle, you slow down to 8 miles an hour, correct?

A.     I believe so.   I wasn't watching it.

. . . .

Q.     And there was never any rapid deceleration of speed?

A.     No -- I didn't have to slam on my brakes, no, I didn't.

Q.     Okay.   So to the extent the police report indicates that you had to stop abruptly, that would not be correct wording?

A.     . . . . I'm not sure how accurate the speed on that is -- is correlated with actual speed of the vehicle.   But, I can tell you from operating the vehicle that I felt like I had to stop abruptly to avoid colliding.   If I'd have maintained my speed, without a doubt, I would've collided with his vehicle.

11

Emmers contends there was no immediate hazard created by temporarily blocking Gordon's lane of traffic as he backed into the Cornet. The State maintains that Gordon's testimony establishes that Emmers' actions created an immediate hazard. As previously stated, proof that a statute was violated is not required to determine reasonable suspicion. We, therefore, review the record before us to determine whether Gordon reasonably thought Emmers had committed a traffic offense. *Zervos*, 15 S.W.3d at 152. Here, Gordon testified that he believed a collision would have occurred had he not reduced his speed. The issue of whether this testimony supports a reasonable belief that a traffic violation occurred turns on the evaluation of Gordon's credibility and demeanor. The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede*, 214 S.W.3d at 24–25. We could thus conclude that Emmers' action of maneuvering his vehicle in front of Gordon's, causing Gordon to reduce his speed in order to avoid a collision, provided a reasonable suspicion that Emmers violated Section 545.152 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 545.152. However, because the evidence is clear that reasonable suspicion for the traffic stop existed by virtue of the fact that Emmers failed to remain in the right half of the roadway, we need not rule on this issue.

III.    CONCLUSION

We affirm the judgment of the trial court.

12

Bailey C. Moseley
Justice

Date Submitted:     June 8, 2011
Date Decided:       June 23, 2011

Do Not Publish