

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00501-CR

ROBERT RICHARDSON                                                         APPELLANT

V.

THE STATE OF TEXAS                                                             STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

----------

## OPINION

----------

## I. Introduction

Appellant Robert Richardson appeals following his guilty plea to driving while intoxicated, challenging the trial court's denial of his motion to suppress evidence. He contends in one point that the trial court erred by denying the

motion to suppress because any detention beyond the issuance of a written warning for a traffic violation was unreasonable. We affirm.[1]

## II. Background

At the suppression hearing, Trooper Preston Fulford testified that he worked the 4 p.m. to 3 a.m. shift and was on routine patrol for the Texas Department of Public Safety on August 25, 2010, when he observed a vehicle make an unsafe maneuver while traveling north on Interstate 35-E near the City of Lewisville. Trooper Fulford had been observing a motorcycle because it had been speeding, but he saw Richardson's vehicle, a Tahoe, change lanes without signaling and move into the path of the motorcycle, almost hitting it. Trooper Fulford followed the Tahoe and observed as it weaved within its lane of traffic and crossed into the other lane of traffic, and he testified that he decided to make a traffic stop for failing to drive in a single lane.

Trooper Fulford testified that he followed the vehicle until it was in a safer area to stop before activating his overhead lights. When the vehicle pulled over, it slowed down very quickly and almost completely stopped before moving off of

---

[1]By affirming, we necessarily disagree with the dissent's contention that the trial court's ruling on Richardson's motion to suppress is not before us due to the lack of a written order denying it. The State is not attempting an interlocutory appeal of the grant of a motion to suppress. Rather, Richardson is appealing the judgment that followed the denial of his motion to suppress. Our holding in *State v. Cox* is therefore inapplicable here. *See* 235 S.W.3d 283, 284 (Tex. App.—Fort Worth 2007, no pet.) (en banc). This court has previously declined to adopt the dissent's contentions, and we do so again. *See, e.g.*, *Dahlem v. State*, 322 S.W.3d 685, 690–92 (Tex. App.—Fort Worth 2010, pet. ref'd); *Bracken v. State*, 282 S.W.3d 94, 96 n.1 (Tex. App.—Fort Worth 2009, pet. ref'd).

the freeway. In addition, the vehicle stopped on the fog line, very close to the lanes of traffic on the freeway. Trooper Fulford testified that his main objective in stopping the vehicle was the traffic violation but that the possibility of intoxication was in his mind given the time of day and location.

Trooper Fulford testified that he approached Richardson's vehicle on the passenger side because of its proximity to the fog line and that he noticed a mild odor of an alcoholic beverage while speaking with Richardson through the passenger-side window. Richardson and the passengers in the vehicle denied having consumed alcohol.[2] Trooper Fulford advised Richardson that he had stopped him for failure to maintain a single lane and, while speaking with Richardson, noticed that there was a prescription pill bottle in the vehicle. Richardson told Trooper Fulford that the pill bottle belonged to his girlfriend, and Trooper Fulford asked Richardson to give him the pill bottle. Trooper Fulford testified that Richardson's hands were shaking when he handed him the pill bottle and that Richardson appeared nervous when he was asked about drinking and about the pill bottle.

Trooper Fulford testified that he, at that moment, was suspicious that Richardson was driving while intoxicated based on his driving behavior before the stop, the manner in which Richardson stopped the vehicle, the mild odor of

---

[2]Trooper Fulford testified that Richardson was driving for a limousine service at the time of the stop, that Richardson was dressed as a professional driver would be dressed, and that the passengers reported having just left the airport.

3

alcohol, Richardson's nervousness, the pill bottle, and the passengers' denials of any alcohol use. Even so, Trooper Fulford testified that he had not yet decided to conduct a DWI investigation.

Trooper Fulford testified that he returned to his patrol car to process Richardson's driver's license after advising Richardson that he would receive a warning for the traffic violation. After processing Richardson's driver's license and preparing the written warning, Trooper Fulford returned to the passenger window of Richardson's vehicle. Trooper Fulford testified that, upon arriving at the passenger window of the vehicle, he noticed an "overwhelming" odor of breath mints and that he then decided to conduct a DWI investigation.

Trooper Fulford asked Richardson if he had put a breath mint into his mouth, Richardson confirmed that he had, and Trooper Fulford asked Richardson to step out of the vehicle. Trooper Fulford testified that he had not yet advised Richardson that he was free to leave or that the traffic stop was otherwise complete, but he could not recall if he had previously returned Richardson's driver's license or given him the written warning. He also testified that the reasons to suspect intoxication at that moment were the failure to maintain a single lane of traffic, stopping the vehicle very close to the fog line, the mild odor of alcoholic beverages, the passengers' denials of alcohol use, the empty pill bottle, and the breath mints.

Richardson testified that when Trooper Fulford returned from his patrol car and approached the passenger-side window of the Tahoe, Trooper Fulford

4

handed him his driver's license and a warning ticket. Trooper Fulford then looked up and said, "Did you just take a breath mint?" Richardson testified that he had put a breath mint into his mouth, but he denied that it was to mask the odor of alcohol. Richardson also testified that he returned his driver's license and the warning ticket to Trooper Fulford after Trooper Fulford had asked him to exit the vehicle.

The trial court, after reviewing the entire video of the traffic stop, denied Richardson's motion to suppress and dictated findings of fact onto the record. Among the trial court's findings of fact were that Trooper Fulford returned Richardson's driver's license to him contemporaneously with noticing the smell of breath mints and that the totality of the circumstances, up through and including the smell of the breath mints, provided Trooper Fulford with reasonable suspicion to continue the detention. Richardson pleaded guilty following the trial court's ruling on the motion to suppress, and this appeal followed.

### III. Discussion

Richardson argues in one point that the trial court erred by denying his motion to suppress. Richardson does not challenge the traffic stop itself, arguing instead that there was not reasonable suspicion to continue the detention beyond the issuance of the written warning.

### A. Applicable Law

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.

5

Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on

specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

## B. Analysis

Richardson argues that the purpose of the traffic stop was complete when Trooper Fulford returned his driver's license and gave him the written warning and that any detention beyond that moment was unreasonable. As mentioned, Richardson does not challenge the legality of the initial stop.

An investigative detention must be temporary, and the questioning must last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983); *Balentine v. State*, 71 S.W.3d 763, 770–71 (Tex. Crim. App. 2002); *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). Once an officer concludes the investigation of the

7

conduct that initiated the stop, continued detention of a person is permitted for the purpose of issuing a citation. *Kothe v. State*, 152 S.W.3d 54, 65 n.43 (Tex. Crim. App. 2004) (citing *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999)); *see Coleman v. State*, 188 S.W.3d 708, 719 (Tex. App.—Tyler 2005, pet. ref'd) (holding that purpose of stop was complete upon the issuance of the citation), *cert. denied*, 549 U.S. 999 (2006). Further, once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S. Ct. 417, 422 (1996) (Ginsburg, J., concurring)).

However, if an officer develops reasonable suspicion during a valid traffic stop and detention that the detainee is engaged in criminal activity, prolonged or continued detention is justified. *See Davis*, 947 S.W.2d at 244; *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *see also United States v. Brigham*, 382 F.3d 500, 510–11 (5th Cir. 2004); *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex. App.—Fort Worth 2001, pet. ref'd). Additional facts and information discovered by an officer during a lawful detention may form the basis for a reasonable suspicion that another offense has been or is being committed. *Haas*, 172 S.W.3d at 52.

The question in this case is whether Trooper Fulford had specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that Richardson had engaged in criminal activity. *See Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *Garcia v. State*, 43 S.W.3d

8

527, 530 (Tex. Crim. App. 2001); *McQuarters*, 58 S.W.3d at 255. The trial court found that Trooper Fulford returned Richardson's driver's license contemporaneously with noticing the smell of breath mints. And before smelling the breath mints, Trooper Fulford had previously observed or learned of Richardson's failure to maintain a single lane of traffic, Richardson's quick deceleration when pulling the vehicle off of the highway, Richardson's parking the vehicle very close to the fog line, the empty pill bottle, Richardson's nervousness, the mild odor of alcoholic beverages, and the passengers' denials of alcohol use. These facts, which Trooper Fulford identified during his testimony at the suppression hearing, were sufficient to provide him with reasonable suspicion that Richardson had been driving while intoxicated. *See Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd) ("An officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts which would justify a continued investigatory detention.") (citing *Ortiz v. State*, 930 S.W.2d 849, 856 (Tex. App.—Tyler 1996, no pet.)); *see also Newman v. State*, No. 01-00-00106-CR, 2001 WL 279182, at *3 (Tex. App.—Houston [1st Dist.] Mar. 22, 2001, no pet.) (not designated for publication) (affirming denial of motion to suppress and holding trial court could have found reasonable suspicion based on the appellant's nervousness and strong odor of alcohol, which was inconsistent with the appellant's explanation). Trooper Fulford was thus justified in continuing the traffic stop to further investigate the driving while intoxicated offense. *See Davis*,

9

947 S.W.2d at 244; *Haas*, 172 S.W.3d at 52.  We overrule Richardson's sole point.

## IV. Conclusion

Having overruled Richardson's sole point, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  April 18, 2013