# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00228-CR

**Clifton Crews Hoyt, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT NO. D-13-0316-SB, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Clifton Crews Hoyt was charged with driving while intoxicated. *See* Tex. Penal Code § 49.04(a) (listing elements of offense). The indictment also alleged that Hoyt had previously been convicted of the offense on two prior occasions, which elevated the level of the offense to a third-degree felony. *See id.* § 49.09(b)(2). In addition, the indictment alleged that Hoyt was also previously convicted of a felony-level offense for driving while intoxicated, which elevated the permissible punishment range for the offense at issue to that of a second-degree felony. *See id.* § 12.42(a). Prior to trial, Hoyt filed a motion to suppress evidence relating to his arrest, and the district court denied the motion after the trial started. Once the district court ruled on the motion to suppress, a video recording from the dashboard camera of the arresting officer, Officer Antonio Aguilar, was admitted into evidence and played for the court. At the end of the bench trial, the district court found Hoyt guilty and sentenced him to fourteen years' imprisonment. *See id.* § 12.33

(setting out permissible punishment range for second-degree felony). In two issues on appeal, Hoyt asserts that the district court erred by denying his motion to suppress and that the evidence is legally insufficient to support his conviction. We will affirm the district court's judgment of conviction.

## DISCUSSION

**Motion to Suppress**

In his first issue on appeal, Hoyt asserts that the district "court erred in its denial of [his] motion to suppress based on lack of probable cause" to initiate the traffic stop and to further detain him in order to have Hoyt perform field-sobriety tests.[1]

Although Hoyt contends that there was not probable cause to support the traffic stop or his continued detention, probable cause is not required to initiate an investigative detention. *See Townsend v. State*, 813 S.W.2d 181, 185 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). Instead, an officer may initiate a traffic stop if he has reasonable suspicion that a crime is about to be committed or has been committed. *See Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). In order for reasonable suspicion to exist, an actual violation does not need to have occurred; rather, it is only necessary that "the officer reasonably believed a violation was in progress." *Green*

---

[1] As mentioned above, the ruling on the motion to suppress was made during the trial and before the video was admitted into evidence and played for the district court. Accordingly, when evaluating whether the district court abused its discretion by denying the motion to suppress, we limit our review to the evidence before the district court when it made its ruling. *See Herrera v. State*, 80 S.W.3d 283, 290-91 (Tex. App.—Texarkana 2002, pet. ref'd) (on reh'g) (stating that general rule is that courts "consider only the evidence adduced at the suppression hearing because the ruling was based on that evidence rather than evidence introduced later" but that there is exception to general rule "when the suppression issue has been consensually relitigated by the parties during trial").

2

*v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); *see Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (noting that officer may briefly detain person for investigative purposes on less than probable cause where specific and articulable facts along with inferences from those facts reasonably warrant detention). "In assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997); *see also Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (explaining that "[t]his standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant"). Moreover, the assessment is made in light of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

In addition, the analysis considers the cumulative information that was known to the cooperating officers, and it is not necessary that the detaining officer have knowledge of every fact supporting reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *see Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983) (explaining that if law enforcement officials are cooperating in investigation, "the knowledge of one is presumed shared by all"). Provided that the traffic stop is based on reasonable suspicion, then the detention "does not violate Texas law." *Guerra*, 432 S.W.3d at 911. Furthermore, if during a valid detention, "the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified." *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *see also State v. Woodard*, 341 S.W.3d 404, 414 (Tex. Crim. App. 2011) (determining

that information known to officer gave him reasonable suspicion to detain and administer field-sobriety tests).

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). Moreover, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). "When the trial court does not file findings of fact concerning its ruling on a motion to suppress, we assume that the court made implicit findings that support its ruling, provided that those implied findings are supported by the record." *Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). In addition, a trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case regardless of whether the trial court based its ruling on that theory. *Story*, 445 S.W.3d at 732.

4

Further, appellate courts "view the evidence in the light most favorable to the" trial court's ruling. *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011).

During the trial, the only witness who testified was Officer Aguilar. In his testimony, Officer Aguilar explained that he initiated a traffic stop because he believed Hoyt was driving with a suspended license and because he observed Hoyt violate a city traffic ordinance. In particular, Officer Aguilar recalled that he recognized Hoyt when he drove by on his motorcycle because he had "previously dealt with [Hoyt] regarding" Hoyt's driving with an invalid license and that he knew that Hoyt's "license was invalid." *See* Tex. Transp. Code § 521.457 (providing that person commits offense if he "operates a motor vehicle" while his license is cancelled, suspended, revoked, or expired). When discussing this further, Officer Aguilar explained that Hoyt had been given multiple suspensions "not too long before" the day in question. Although Officer Aguilar admitted that he was not "100 percent" certain that Hoyt's license was suspended at the moment he initiated the traffic stop and that he did not check to make sure before making the stop, he stated that "[i]t didn't seem reasonable to me that every single one of those had been lifted" in the amount of time since his previous encounter with Hoyt. *Cf. Williams v. State*, No. 11-12-00163-CR, 2014 WL 2810083, at *2 (Tex. App.—Eastland June 19, 2014, no pet.) (mem. op., not designated for publication) (noting that officer initiated traffic stop "based on his awareness of [defendant]'s outstanding warrant" through electronic database "that officers were supposed to review . . . on a daily basis" and that "an officer's belief that the owner of a vehicle has an outstanding arrest warrant may constitute reasonable suspicion justifying an investigative stop of the vehicle").

Regarding the city ordinance, Officer Aguilar explained that he saw Hoyt violate the ordinance when he displayed "an exhibition of acceleration" by leaving "the flow of traffic [by] taking off faster than the other vehicles."[2] *See* San Angelo, Tex. Code of Ordinances §§ 10.03.002 (prohibiting person from making "an exhibition of acceleration while driving a motor vehicle on a public street"), .01.001 (providing that "[e]xhibition of acceleration" means, among other things, "[a]ccelerating a motor vehicle so as to move rapidly ahead of or out of a group of other motor

---

[2] In his briefs, Hoyt asserts that Officer Aguilar's testimony that he "violated a city ordinance . . . is nothing more than a mere opinion not supported by 'specific, articulable facts.'" As support for his assertion that Officer Aguilar's testimony is insufficient, Hoyt principally relies on *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005). In that case, the officer initiated a traffic stop for failing to comply with a provision of the Transportation Code requiring drivers to "'maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.'" *Id.* at 490 (quoting Tex. Transp. Code § 545.062(a)). During the suppression hearing, the officer simply asserted that he observed the defendant "following too close" without further explanation. *Id.* at 491. On appeal, the court of criminal appeals explained that the testimony "reveal[ed] an absence of any facts allowing an appellate court to determine the circumstances upon which [the officer] could reasonably conclude that [the defendant] actually was, had been, or soon would have been engaged in criminal activity" and was instead "presented only with a conclusory statement that [the defendant] was violating a traffic law." *Id.* at 493. Further, the court explained that "articulable facts are required to provide a basis for finding reasonable suspicion"; that "[m]ere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis"; and that without those "a court has no means in assessing whether this opinion was objectively reasonable." *Id.*

We find Hoyt's reliance on *Ford* misplaced. In this case, Officer Aguilar did not simply provide a conclusory opinion that Hoyt displayed an "exhibition of acceleration" and instead also explained that he observed Hoyt leave "the flow of traffic taking off faster than the other vehicles" and agreed that he observed "a rapid acceleration away from traffic." Accordingly, Officer Aguilar provided additional facts from which the district court could assess whether the opinion that a violation occurred was objectively reasonable. Even assuming for the sake of argument that this additional information was insufficient, Officer Aguilar also initiated a traffic stop based on his belief that Hoyt was driving without a valid license, which was founded on Officer Aguilar's personal knowledge from his prior interactions with Hoyt that multiple suspensions had been imposed on Hoyt's license not "too long before" the day in question.

6

vehicles which are traveling at approximately the officially posted speed limit in the area").[3] When making its ruling, the district court explained that Officer Aguilar was authorized to stop Hoyt to ascertain whether Hoyt was driving without a valid driver's license and that it found Officer Aguilar's testimony that he observed Hoyt commit a traffic violation to be credible.

In light of the district's court's credibility determination regarding Officer Aguilar and in light of the Officer's testimony, we must conclude that the district court did not abuse its discretion by determining that Officer Aguilar had reasonable suspicion to initiate a traffic stop. *See Bullock v. State*, 426 S.W.3d 226, 229 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (stating that "[a] law enforcement officer may lawfully stop and detain a motorist who commits a traffic violation"); *Bracken v. State*, 282 S.W.3d 94, 98 (Tex. App.—Fort Worth 2009, pet. ref'd) (explaining that violation of provision of Transportation Code creates reasonable suspicion justifying stop).

In addition to testifying about the two traffic violations, Officer Aguilar explained that prior to initiating the traffic stop, he received a report from his dispatch alerting him that there had been a report of an individual driving recklessly in the area and providing him with the license plate number for the vehicle. Further, Officer Aguilar explained that he ran the plate number, that the vehicle was registered to Hoyt, and that he saw Hoyt drive by on that vehicle. *See Rita v. State*, No. 08-14-00098-CR, 2016 WL 419677, at *6 (Tex. App.—El Paso Feb. 3, 2016, no pet.) (not designated for publication) (concluding that report of defendant's "erratic driving, occurring only minutes before" officer arrived, "was sufficient to create a reasonable suspicion that" defendant

---

[3] In his testimony, Officer Aguilar admitted that Hoyt did not endanger any other motorists when he violated the ordinance, but the ordinance does not require that anyone be placed in danger by the driver's exhibition of acceleration in order for the acceleration to constitute a violation. *See* San Angelo, Tex. Code of Ordinances §§ 10.03.002, .01.001.

"had been driving while intoxicated, or was otherwise driving in a reckless manner"); *see also Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (noting that "erratic driving" is one type of evidence that would logically raise inference of intoxication). When discussing events that occurred after he activated his emergency lights, Officer Aguilar recalled that Hoyt "didn't pull over immediately," that he continued "a few blocks before" pulling over, and that he made a left turn before pulling over on a side street instead of going to the "right-hand side of the roadway and pulling over." *See Baker v. State*, No. 09-13-00085-CR, 2014 WL 1400373, at *5 (Tex. App.—Beaumont Apr. 9, 2014, pet. ref'd) (mem. op., not designated for publication) (noting, among other things, that defendant "failed to pull over immediately" when deciding that trial court did not abuse its discretion by denying motion to suppress and concluding that reasonable suspicion existed for officer to believe that defendant committed offense of driving while intoxicated).

Regarding the events that occurred after Hoyt pulled over, Officer Aguilar related that although he did not smell alcohol, he stated that Hoyt "was very agitated, fidgety, seemed to be having a hard time holding still," and "seemed off" and "outside of the norm" from other times in which Officer Aguilar had interacted with Hoyt. Specifically, Officer Aguilar stated that Hoyt's behavior during the traffic stop was similar to another time that he interacted with Hoyt when Hoyt was "clearly under the influence of a drug" and was dissimilar to the behavior that Hoyt displayed on yet another occasion when Hoyt was not intoxicated. Accordingly, Officer Aguilar explained that he believed that he needed to conduct an investigation regarding whether Hoyt was intoxicated. *Cf. Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (noting that, in general, officer's testimony that accused was intoxicated is evidence of intoxication).

8

In light of all of the circumstances and information known to Officer Aguilar, we must conclude that the district court did not abuse its discretion by determining that reasonable suspicion existed for Officer Aguilar to conclude that Hoyt had committed the offense of driving while intoxicated and to detain Hoyt for the purpose of performing field-sobriety testing. *See* Tex. Penal Code § 49.04(a).

For all of these reasons, we must conclude that the district court did not abuse its discretion by denying Hoyt's motion to suppress. Accordingly, we overrule Hoyt's first issue on appeal.

**Sufficiency of the Evidence**

In his second issue on appeal, Hoyt contends that the evidence presented during the trial was insufficient "to support [his] conviction for driving while intoxicated" but limits his challenge to the evidence supporting a determination that he was intoxicated.[4] When presenting this issue, Hoyt notes that "[t]here was no breath sample, blood draw, or forensic analysis." In addition, he asserts that while the Transportation Code requires a police officer to obtain a sample of a person's breath or blood if the officer learns that the person "has been previously convicted of or placed on community supervision for" driving while intoxicated "on two or more occasions," *see*

---

[4] On appeal, Hoyt asserts that the evidence for his conviction is "both legally and factually insufficient." However, the court of criminal appeals has clarified that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *cf. Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011) (explaining that "we do not review the factual sufficiency of the evidence . . . on the elements of a criminal offense that the State is required to prove beyond a reasonable doubt").

Tex. Transp. Code § 724.012(b)(3), no evidence was presented regarding why Officer Aguilar "did not seek a mandatory blood draw." Furthermore, Hoyt contends that his performance on the field-sobriety tests "are irrelevant inasmuch as Officer Aguilar stated that he did not believe [that Hoyt] was intoxicated by alcohol" but by some other substance. Moreover, Hoyt asserts that Officer Aguilar did not perform any drug-recognition testing and instead simply relied on the types of tests used to evaluate whether someone was intoxicated from consuming alcohol.

Under the Penal Code, an individual commits the offense of driving while intoxicated if he "is intoxicated while operating a motor vehicle in a public place," Tex. Penal Code § 49.04(a), and an individual is intoxicated if he does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body," *id.* § 49.01(2). In a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this analysis, a reviewing court must bear in mind that it is the fact-finder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Furthermore, reviewing courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Moreover, reviewing courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

10

As discussed previously, Officer Aguilar testified that he received a report that Hoyt had been driving in a reckless manner and that Hoyt continued to drive rather than pull over after Officer Aguilar activated his emergency lights. Moreover, the video shows that after Officer Aguilar activated his lights, Hoyt moved into the left hand lane instead of pulling over to the right lane and parking at one of several parking lots on the right side of the road, that Hoyt continued to drive for several blocks before making a left-hand turn onto another road, that Hoyt passed a gas station parking lot on his right after making the turn, and that Hoyt turned on his right-turn signal after turning but continued to drive on the new road for some time with the signal flashing before ultimately pulling over to the side.

In addition, during his testimony, Officer Aguilar related that he had extensive training in performing field-sobriety tests and was a certified drug-recognition expert, meaning that he had received training for identifying the type of drugs that a person may have consumed based on the person's behavior. Although Officer Aguilar admitted, as pointed out by Hoyt, that he was unable to perform any drug-recognition testing at the scene, he believed that Hoyt was intoxicated due to the ingestion of something other than alcohol.[5] Moreover, Officer Aguilar mentioned that it "was pretty chilly" that day and that he thought that he was wearing a coat, but he also related that when he interacted with Hoyt, he noticed that Hoyt was wearing shorts. Further, Officer Aguilar recalled that Hoyt "wasn't shivering" and that he was fidgety and was scratching himself. In

---

[5] Later, Officer Aguilar explained that when he arrested Hoyt, he searched Hoyt and found a baggy filled with a substance that he believed was marijuana, and Officer Aguilar testified that Hoyt stated that it was marijuana and that he was "a marijuana user" but denied being under "the influence of any illicit drugs."

addition, Officer Aguilar elaborated that through his experience and training, he has learned that "people who are under the influence of a drug may not feel heat and cold the same as a sober person."

In his testimony, Officer Aguilar detailed his observations regarding Hoyt's performance on various field-sobriety tests. *See Kirsch*, 306 S.W.3d at 745 (listing "inability to perform field-sobriety tests or follow directions" as "evidence that would logically raise an inference that the defendant was intoxicated"). First, he related that he performed the horizontal-gaze-nystagmus test but that he "did not observe nystagmus in" Hoyt's eyes. However, Officer Aguilar also explained that if he was performing the test on someone who is under the influence of something other than alcohol, he would not expect to see a positive result for the test. Next, Officer Aguilar recalled that he asked Hoyt to perform the walk-and-turn test and that Hoyt displayed three of eight possible indicators of intoxication. Specifically, he related that Hoyt was "unable to maintain his balance during the instructional stage," "missed touching heel-to-toe a few times," and "had to use his arms to balance." Moreover, Officer Aguilar admitted that the national-highway-traffic-safety-administration manual explains that the walk-and-turn test is only validated for alcohol intoxication, but he also explained that the same test can show intoxication from other causes and that the test is used in drug-recognition testing.

After discussing the walk-and-turn test, Officer Aguilar testified that he asked Hoyt to perform the one-leg test and that Hoyt displayed three of four possible indicators of intoxication. In particular, Officer Aguilar stated that Hoyt "swayed," "had to use his arms for balance," and "put his foot down." *See id.* (explaining that swaying and stumbling are indicative of intoxication). In addition, Officer Aguilar stated that based on his training and under the totality of the circumstances,

12

he concluded that Hoyt was intoxicated. *See Kiffe*, 361 S.W.3d at 108 (providing that, in general, officer's testimony that individual is intoxicated provides sufficient evidence to establish element of intoxication). Further, as described earlier, Officer Aguilar testified before the district court made its ruling on the motion to suppress that he had previously seen Hoyt intoxicated and not intoxicated and that Hoyt's behavior on the day in question was consistent with Hoyt's behavior when he was intoxicated.

Next, Officer Aguilar recalled that after determining that Hoyt was intoxicated, he arrested Hoyt. When describing the arrest, Officer Aguilar relayed that Hoyt was initially "raging, yelling, [and] cursing at me" but then kept falling asleep in the back of the patrol car. *See Leigh v. State*, No. 10-12-00056-CR, 2013 WL 5777852, at *4 (Tex. App.—Waco Oct. 24, 2013, no pet.) (mem. op., not designated for publication) (explaining that fact that defendant "fell asleep while being transported to the jail" indicated that defendant was intoxicated). In addition, Officer Aguilar stated that when he woke Hoyt up on several occasions, Hoyt "shot back up to that extremely agitated state of yelling and cursing." *See Markey v. State*, 996 S.W.2d 226, 230 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (determining that evidence of cursing along with other evidence was sufficient to permit jury to rationally conclude that defendant was intoxicated). When describing Hoyt's behavior in the police car, Officer Aguilar agreed that falling asleep was not the typical behavior for someone who has been arrested and testified that he had not seen "the wild fluctuation of behavior" during his previous interaction with Hoyt when Hoyt was not intoxicated. Finally, as mentioned above, a video was played for the district court showing the events occurring between the traffic stop and Hoyt being transported to jail, and the video is generally consistent with Officer Aguilar's testimony.

13

In light of all of the evidence previously summarized as well as the reasonable inferences that the district court could have made from that evidence and given our standard of review for legal-sufficiency challenges, we must conclude that the evidence is legally sufficient to support the district court's determination that Hoyt was intoxicated. Accordingly, we overrule Hoyt's second issue on appeal.

**Clerical Error**

Although Hoyt does not raise this on appeal, we observe that the judgment of conviction in this case contains a clerical error. The judgment in this case reflects that Hoyt pleaded "not true" to the enhancement allegation in the second paragraph of the indictment asserting that Hoyt had previously been convicted of a felony and that the district court made a "not true" finding regarding the allegation. However, the remainder of the judgment reflects that Hoyt's punishment level was enhanced based on the enhancement allegation, and the reporter's record in this case reflects that Hoyt entered a plea of "true" to the allegation. This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). For these reasons, we modify the judgment to reflect that Hoyt entered a plea of true to the enhancement allegation in the second paragraph and that the district court found the enhancement to be true.

**CONCLUSION**

Having modified the judgment and having overruled Hoyt's two issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Pemberton

Modified and, as Modified, Affirmed

Filed:   August 12, 2016

Do Not Publish

15